Minute Order Form (rev. 12/90)

# UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF ILLINOIS

| Name of Assigned Judge or Magistrate Judge | ROBERT W. GETTLEMAN | Sitting Judge if Other Than Assigned Judge | |
|---|---|---|---|
| Case Number | 00 C 1326 | Date | December 15, 2000 |
| Case Title | R R Donnelley & Sons v Q Todd Dickinson | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd-party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [use listing in "MOTION" box above]
(2) ☐ Brief in support of motion due _____
(3) ☐ Answer brief to motion due _____ Reply to answer brief due _____
(4) ☐ Ruling/Hearing on _____ set for _____ at _____
(5) ☐ Status hearing ☐held ☐continued to ☐set for ☐re-set for _____ at _____
(6) ☐ Pretrial conf. ☐held ☐continued to ☐set for ☐re-set for _____ at _____
(7) ☐ Trial ☐Set for ☐re-set for _____ at _____
(8) ☐ ☐Bench Trial ☐Jury Trial ☐Hearing held and continued to _____ at _____
(9) ☐ This case is dismissed ☐without ☐with prejudice and without costs ☐by agreement ☐pursuant to
    ☐FRCP 4(j) (failure to serve) ☐General Rule 21 (want of prosecution) ☐FRCP 41(a)(1) ☐FRCP 41(a)(2)
(10) ☑ [Other docket entry]

Memorandum opinion and order entered. Accordingly, defendant's motion for summary judgment is granted and plaintiff's cross motion for summary judgment is denied.

(11) ☑ [For further detail see ☐ order on the reverse of ☑ order attached to the original minute order form.]

☐ No notices required, advised in open court.
☐ No notices required.
☑ Notices mailed by judge's staff.
☐ Notified counsel by telephone.
☐ Docketing to mail notices.
☐ Mail AO 450 form.
☐ Copy to judge/magistrate Judge.

courtroom deputy's Initials

Date/time received in central Clerk's Office

number of notices
date docketed: DEC 20 2000
docketing dpty. initials
date mailed notice
mailing dpty. initials

Document #

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

R.R. DONNELLEY & SONS COMPANY, )
                 )
    Plaintiff, )
                 )    No.   00 C 1326
v. )
                 )    Judge Robert W. Gettleman
Q. TODD DICKINSON, Under Secretary of )
Commerce for the Intellectual Property and )
Director of the United States Patent and )
Trademark Office, )
                 )
    Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff R. R. Donnelley & Sons Company has brought suit against Q. Todd Dickinson, Under Secretary of Commerce for the Intellectual Property and Director of the United States Patent and Trademark Office, pursuant to 28 U.S.C. §1338(a), to appeal his denial of plaintiff's repeated attempts to have plaintiff's patent reinstated. Both parties have filed motions for summary judgment. For the reasons set forth below, the court grants summary judgment for defendant.

## FACTS[1]

On September 8, 1981, a patent application entitled "Apparatus for Printing Books of Signatures and Method for Same" was filed with the United States Patent and Trademark Office ("PTO"). The patent, which was later designated as United States Letters Patent 4, 395, 031 ("the '031 patent"), was assigned to The Webb Company of St. Paul, Minnesota ("Webb").

---

[1] The following facts are undisputed unless otherwise noted. Certain facts will be discussed in more detail in the body of the opinion.

Webb, a company engaged in printing and publishing, hired the Minneapolis law firm Merchant, Gould, Smith, Edell, Welter & Schmidt ("Merchant & Gould") to act before the PTO in connection with the '031 patent application. On July 26, 1983, Merchant & Gould were successful in prosecuting the patent with the PTO and the '031 patent was issued. Just over two years later, on July 31, 1985, Webb assigned the '031 patent to plaintiff in a formal agreement in exchange for $200,000. The agreement provided that plaintiff would license the '031 patent to other printing companies in a royalty sharing arrangement whereby plaintiff and Webb would each receive 50% of such payments.[2] According to plaintiff, Webb undertook the responsibility to pay for all maintenance fees[3] on the '031 patent, though no such deal is reflected in the formal assignment between plaintiff and Webb.

The PTO, in keeping with its regular practice, sent a reminder notice to Merchant & Gould, the counsel of record for the '031 patent, regarding the due date of the first maintenance fee on the patent. Merchant & Gould paid the first maintenance fee through Computer Packages, Inc., an annuity payment company, on July 6, 1987. This payment was made with the authorization of Mr. John A. Carlson ("Carlson"), Webb's Vice President of Finance and Corporate Secretary and Treasurer. There is no evidence that plaintiff had any involvement in the payment of the first maintenance fee, or was aware of how or by whom the payments were being handled.

---

[2] This arrangement was later modified so that plaintiff would receive 55% and Webb would receive 45% of all licensing income derived from the '031 patent.

[3] Under 35 U.S.C. §41(b), enacted in 1980, maintenance fees are due on issued patents at certain times during their maximum terms. Failure to pay a maintenance fee within six months of one of the required times results in expiration of the patent.

2

On December 24, 1987, Carlson's employment with Webb was terminated. On December 31, 1988, the division of Webb that was involved in publishing was sold to Rothschild, Inc., and was shortly thereafter made a division of Intertec Publishing ("the Intertec/Webb publishing division"). By 1990, the Intertec/Webb publishing division had moved its offices to Bloomington, Minnesota. On March 1, 1990, the division of Webb that was involved in printing was sold to Quebecor, Inc. ("the Quebecor/Webb printing division"). The Quebecor/Webb printing division maintained its original address in St. Paul, Minnesota. Quebecor was the successor in interest to the '031 patent licensing agreement between plaintiff and Webb.

The second maintenance fee for the '031 patent was due on January 26, 1991, with a six-month grace period extending until July 26, 1991. Upon receiving notice that this fee was coming due, Ms. Diane Ruzin ("Ruzin"), the Annuities Coordinator at Merchant & Gould, attempted to notify Webb via letter on September 18, 1990. Ruzin addressed this letter to "Vice President/Finance, Webb Div. Intertec Publishing," and mailed it to Webb's St. Paul address. Shortly thereafter, Mr. Pat Suprison ("Suprison") requested that Ruzin send him a copy of the '031 patent. Following that request, Ruzin placed a call and sent a letter to Suprison requesting instructions regarding the payment of the second maintenance fee for the '031 patent. The parties dispute whether this second letter was properly addressed and whether it was received by Suprison. The parties agree, however, that Ruzin did not follow the precise procedures in Merchant & Gould's "CHECKLIST U.S. MAINTENANCE FEES," in that the letter she sent to Suprison was sent first class instead of by certified mail, and, hearing no response from Suprison, Ruzin failed to contact the responsible attorney at Merchant & Gould to ask what further

3

precautionary steps should be taken concerning the payment of the maintenance fees for the '031 patent. Instead, Ruzin decided not to pay the second maintenance fee. On July 28, 1991, the '031 patent expired.

Five and a half years later, on November 25, 1996, plaintiff first learned of the lapse of the '031 patent and began to conduct an investigation into the above events. On February 21, 1997, plaintiff filed a petition (including all required maintenance payments and surcharges) to Reinstate Patent Under 37 C.F.R. 1.378(b) with the PTO. On September 24, 1997, plaintiff's petition was dismissed by the PTO. On November 21, 1997, plaintiff filed a Petition for Reconsideration with the PTO, which was denied on July 30, 1998. On December 11, 1998, plaintiff filed a Petition to Acting Commissioner Dickinson of the PTO Under 37 C.F.R. 1.181(a)(3) To Invoke Supervisory Authority, but that was denied on January 22, 1999. Plaintiff subsequently filed this appeal.

## STANDARD OF REVIEW

A movant is entitled to summary judgment under Rule 56 when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Unterreiner v. Volkswagen of America, Inc., 8 F.3d 1206, 1209 (7th Cir. 1993). In Camp v. Pitts, 411 U.S. 138, 142 (1973), the Court declared that where, as here, summary judgment is based on an administrative record, there can be no genuine issue of material fact regarding the contents of the record. Thus, the court reviews defendant's decision not to revive the '031 patent based solely on the administrative record to determine whether defendant's decision was

"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" pursuant to 5 U.S.C. §706(2)(A). As the Supreme Court has explained,

> Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. The reviewing court should not attempt itself to make up for such deficiencies; we may not supply a reasoned basis for the agency's action that the agency itself has not given. We will, however, uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.

Motor Vehicle Mfrs. Asso. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) (internal quotations and citations omitted).

35 U.S.C. §41(c)(1) gives defendant authority to accept maintenance fee payments (and thus revive patents) that are over 30 months late if "the delay is shown to the satisfaction of [defendant] to have been unavoidable." Whether or not a delay is unavoidable is decided on a case-by-case basis, taking all of the facts and circumstances into account. Smith v. Mossinghoff, 671 F.2d 533, 538 (D.C. Cir. 1982). The burden of showing the cause of the delay is on the person seeking to revive the patent. Id. Pursuant to PTO regulations, plaintiff can show that the delay in paying a maintenance fee was unavoidable by making a showing that:

> the delay was unavoidable since reasonable care was taken to ensure that the maintenance fee would be paid timely and that the petition was filed promptly after the patentee was notified of, or otherwise became aware of, the expiration of the patent. The showing must enumerate the steps taken to ensure timely payment of the maintenance fee, the date and the manner in which the patentee became aware of the expiration of the patent, and the steps taken to file the petition promptly.

37 C.F.R. 1.378(b)(3). Decisions on reinstating a lapsed patent are made by applying the "reasonably prudent person" standard. Ray v. Lehman, 55 F.3d 606, 608-09 (Fed. Cir. 1995).

"The test of whether the delay is unavoidable is applicable to ordinary human affairs, and requires no more or greater care or diligence that is generally used and observed by prudent and careful men in relation to their most important business." In re Mattullath, 38 App. D.C. 497 (1912).

## DISCUSSION

The parties do not dispute that the '031 patent lapsed due to the nonpayment of the second maintenance fee required by 35 U.S.C. §41. The disagreement here is whether defendant's decision not to revive the '031 patent following its lapse was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Plaintiffs contents that it was; defendant maintains that it was not.

The court notes at the outset that determinations by the PTO with regard to whether or not a delay was unavoidable "must be accorded a large degree of discretion." Laerdal Medical Corp. v. Ambu, Inc., 877 F. Supp. 255, 258 (D. Md. 1995). "[I]t is almost surely preferable for a reviewing court not to involve itself in the minutiae of [PTO] proceedings and to second-guess the [PTO] on procedural issues at every turn." Id. (citing Struthers Patent Corp. v. Nestle Co., Inc., 558 F. Supp. 747, 803 (D.N.J. 1981)). Keeping this in mind, the court begins by reviewing the bases for defendant's determination that plaintiff's delay in paying the maintenance fees on the '031 patent was not "unavoidable."

Although defendant based his September 24, 1997, and October 13, 1998, decisions on slightly different findings of fact, his general conclusion was that the showing made by plaintiff was inadequate to establish unavoidable delay within the meaning of 37 C.F.R. 1.378(b)(3). Defendant based this determination on many factors. Most notably, defendant found that,

6

according to the record, plaintiff did not put forth any effort to personally monitor the payment of the maintenance fees and did not hire or otherwise arrange for someone else to monitor the payment of the maintenance fees. Instead, plaintiff left the payment of the maintenance fees to Webb, and later to Quebecor. Based on these facts, defendant concluded that, "[Petitioner] has not shown diligence with respect to any aspect of the payment of the second maintenance fee for [the '031 patent]," and that, "Petitioner's lack of due diligence with respect to this patent, for a period of time of almost seven years, overcame and superseded any negligence by [its] representatives." Finally, defendant concluded that, "The delay was not unavoidable, because had [petitioner] exercised the due care of a reasonably prudent person, [petitioner] would have been able to act to correct the situation in a timely fashion."

Defendant's reasoning and conclusion is fully supported by the record in this case. In addition, under no circumstances could the court find that defendant's reasoning or conclusion was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Nonetheless, the court will briefly address the arguments made by plaintiff.

Plaintiff argues that defendant erred in placing the onus of reasonable care on plaintiff instead of on the third parties. Plaintiff points out that when a patentee relies on a third party or counsel to pay its maintenance fees, the PTO's focus should shift to determine whether the third party acted reasonably and prudently, citing California Medical Prods. v. Tecnol Medical Prods., 921 F. Supp. 1219, (D. Del. 1995), to support this proposition. Defendant was clearly aware of the necessity to examine whether the third parties in this case acted reasonably, however. This is clear from defendant's acknowledgment that "such reliance merely shifts the focus of the inquiry from [plaintiff] to whether that third party acted reasonably," as well as from his conclusion that,

7

"The record fails to establish that [plaintiff] and either Webb or Quebecor took adequate steps to ensure timely payment of the maintenance fee as required by 37 C.F.R. 1.378(b)(3)."

Defendant properly disregarded as immaterial plaintiff's argument that it was reasonable for it to rely on Merchant & Gould since that firm is "a well-known, highly regarded intellectual property law firm" which "had a strict protocol in place with a detailed checklist for ensuring payment of maintenance fees." The third party upon which plaintiff relied in the instant case was not Merchant & Gould; it was Webb, and later Quebecor. As defendant pointed out,

> [T]here is no showing that [plaintiff] had engaged Merchant & Gould to track the maintenance fee, or that Merchant & Gould was tracking the maintenance fee on behalf of [plaintiff]. Moreover, Merchant & Gould was not acting on behalf of [plaintiff]; rather, Merchant & Gould had been engaged by Webb, who had no further equitable or legal title in this patent [at the time the second maintenance fee became due].

In addition, plaintiff overlooks the court's preliminary finding in California Medical Prods. that the patentee acted "as a reasonably prudent person" in relying on the attorney he had personally obtained to handle all patent matters. Id. at 1259. Defendant did not make that same preliminary finding in the instant case; instead, defendant concluded that plaintiff's reliance on Webb (and later Quebecor) was not reasonable because Webb, having assigned the patent to plaintiff, had given up "all legal rights to the patent" and therefore could not insist that anyone make the maintenance payments. Defendant further noted that plaintiff offered no evidence "to show that [plaintiff], as a reasonably prudent person, took any measure to ensure that first Webb, and later Quebecor, understood its obligation in this matter and that it was being relied upon by [plaintiff] to attend to payment of the maintenance fees." Thus, defendant did not reach the same conclusion reached by the court in California Medical Prods. because defendant did not find that

8

plaintiff acted as a reasonably prudent person in relying on Webb or Quebecor under the circumstances of the instant case.

Plaintiff next argues that the PTO has revived patents for lesser cause than that demonstrated in the instant case, such as its decision to revive a patent in Laerdal, 877 F. Supp. 255, due to a docketing error. Laerdal is distinguished from the instant case, however, since the patentee in that case personally hired a patent attorney to handle matters related to the patent. Conversely, in the instant case plaintiff left the payment of maintenance fees to Webb to handle (or to pass on to some other entity unknown to plaintiff at the time) and made no effort to ensure that the maintenance fees were being paid even after Webb was broken into pieces, sold to two different companies, and partially relocated. In addition, although plaintiff is correct that the court in Laerdal upheld the PTO decision to revive the patent on the basis of the docketing error, the court also noted that "the PTO may well have stretched the meaning of 'unavoidable' to the limit" in doing so. Id. at 258.

Thus, the court agrees with defendant that plaintiff's delay in paying the maintenance fees on the '031 patent does not fit within the limits of "unavoidable." Other than blindly leaving the maintenance fees for the '031 patent to Webb (even after Webb was purchased by a different company), plaintiff has not established that any steps were taken to ensure timely payment pursuant to 37 C.F.R. 1.378(b)(3). Likewise, the court agrees with defendant that plaintiff's actions in this case do not establish the diligence that is generally used and observed by "prudent and careful men in relation to their most important business." In re Mattullath, 38 App. D.C. 497 (1912). A prudent and careful person's most important business matters surely deserve more attention than that given by plaintiff to the required maintenance fee payments for the '031

9

patent. Accordingly, the court finds that plaintiff has failed to establish that defendant's reasoning or conclusion was in any way "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is granted and plaintiff's cross motion for summary judgment is denied.

**ENTER:** December 15, 2000

_____
**Robert W. Gettleman**
**United States District Judge**